UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROGRESS SOFTWARE CORPORATION, | ) ) ) |
| Plaintiff, | ) ) Civil Action No. _____ |
| v. | ) **JURY TRIAL DEMANDED** |
| CELAYIX INC., | ) ) ) |
| Defendant. | ) |

## VERIFIED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

Plaintiff Progress Software Corporation ("PSC") brings this action against Defendant Celayix Inc. ("Celayix") for copyright infringement, trade secret misappropriation, unfair and deceptive acts and practices, breach of contract, and conversion. In support of its Verified Complaint, PSC states as follows:

## NATURE OF THE ACTION

1.     This action stems from Celayix's willful copyright infringement, misappropriation, and deceit designed to conceal Celayix's infringement and misuse of PSC's software products. PSC is a software company that has been offering solutions to develop, deploy, and manage high-impact business applications for over forty years. In 2008, Celayix became a customer of PSC and began using PSC's software products in its applications. The two companies maintained a business relationship for almost two decades, during which Celayix has incorporated multiple PSC products into its applications.

2.     In April of 2023, as a result of nonpayment, PSC terminated an agreement with Celayix pursuant to which Celayix was permitted limited rights to use and distribute PSC's copyrighted products. Following PSC's termination of the agreement, Celayix falsely assured PSC

that Celayix was phasing out the use of PSC software and migrating its software as a service ("SaaS") customers to a different application, which utilized products of a different software vendor.

3.    In fact, PSC has learned that Celayix continues to make substantial use of PSC software in Celayix's applications, and, despite receiving multiple notices and requests to cease and desist such use, as well as offers to make back payments and sign new term sheets, Celayix continues to blatantly and willfully infringe upon PSC's copyrighted property. PSC now has no choice but to bring this action to protect its intellectual property and to recover its damages associated with Celayix's willful infringement and misappropriation.

## PARTIES

4.    Plaintiff Progress Software Corporation is Delaware corporation with its principal place of business at 15 Wayside Road, Burlington, Massachusetts, 01803. PSC provides solutions to develop, deploy, and manage high-impact business applications across industries ranging from healthcare to telecommunications to banking and finance and national security.

5.    On information and belief, Celayix, Inc. is a Canadian corporation with its principal place of business at 565 Howe Street, Vancouver, British Columbia, V6C 2T5. Celayix provides software solutions for employee scheduling. Celayix maintains an office in the U.S. located at 1700 Seventh Avenue, Seattle, Washington, 98101.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises "under the Constitution, laws, or treaties of the United States," specifically, the Copyright Act, 17 U.S.C. §§ 501 *et seq.* and the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*

7.      This Court has supplemental jurisdiction over PSC's state law claims pursuant to 28 U.S.C. 1367(a) because those claims are so related to the federal claims as to form part of the same case or controversy.

8.      Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district, and because the Defendants are subject to personal jurisdiction in this District both because of their multiple and continuous contacts with the Commonwealth of Massachusetts both generally and with respect to the allegations set forth in this Complaint, and because the agreement governing the relationship between the parties requires that any disputes be resolved under Massachusetts law and in the Commonwealth of Massachusetts.

## GENERAL ALLEGATIONS

**A.      The Formation of the Parties' Business Relationship and the Software Products at Issue.**

9.      PSC and Celayix's business relationship dates back almost two decades, to 2008, when Celayix acquired, via assignment from a former PSC customer, rights to use certain PSC products under four End User Product License Agreements.

10.     Between 2008 and 2021, PSC and Celayix entered into a number of successive application partner agreements and service provider license agreements, under which Celayix was granted limited, nonexclusive access to various software products offered by PSC.

11.     On February 5, 2021, PSC and Celayix entered into their most recent, operative Progress Accelerate Partner Program Agreement (the "APPA"), along with an attached and incorporated Service Provider Partner Schedule, and an incorporated End User Licensing Agreement (the "OpenEdge EULA"), whereby PSC granted Celayix a nonexclusive,

nontransferable, limited license to utilize certain of its software products[1] solely in conjunction with Celayix's delivery of services to end users. True and accurate copies of the APPA, the Service Provider Partner Schedule and the OpenEdge EULA are attached hereto as <u>Exhibits A, B, and C, respectively</u>.

12.    The primary PSC software product licensed under the APPA was Progress OpenEdge Advanced Enterprise RDMBS ("OpenEdge").

13.    OpenEdge provides users with a complete and robust solution for building, deploying, and managing enterprise applications, from database management to application development and server infrastructure.

14.    Under the APPA, Celayix was authorized to deploy OpenEdge in Celayix's suite of tools used for scheduling, communicating, and tracking time and attendance of employees.

15.    Specifically, Celayix employed OpenEdge to enable and enhance the functionality of Celayix's Team Xpress and Schedule Xpress web and mobile applications for workforce management, including shift worker timekeeping as well as scheduling, HR, payroll, and other administrative functions.

**B. Celayix's Default and Continued Use of the Software Products.**

16.    On April 4, 2023, PSC sent Celayix a notice of termination of the APPA (the "Termination Notice"). A true and accurate copy of the Termination Notice is attached hereto as <u>Exhibit D</u>.

---

[1] These products included Progress OpenEdge Advanced Enterprise RDMBS, Progress Application Server for OpenEdge, and Progress Developer Studio for OpenEdge.

17.     The termination, made as a result of Celayix's nonpayment under Section 13.2.1.1 of the APPA and Section 11.2.1 of the Service Provider Partner Schedule, was effective as of April 3, 2023.

18.     Pursuant to Section 13.2.4 of the APPA and 11.2.3(i) of the Service Provider Partner Schedule, the due date of all outstanding invoices to Celayix was accelerated such that any payments due thereunder became due and payable on the effective date of termination.

19.     Additionally, pursuant to Section 11.2.3(ii) of the Service Provider Partner Schedule, upon termination, Celayix was required to destroy and cease use of any software licensed under the APPA and Service Provider Partner Schedule, and to destroy and documents and materials provided by PSC thereunder.

20.     Moreover, Section 10 of the APPA and Section 5 of the OpenEdge EULA outline the parties' confidentiality obligations and require that Celayix maintain in confidence all information and know-how transmitted or disclosed to it that PSC identified as being proprietary and/or confidential or that, by the nature of the information, should be recognized as confidential, including the products and information set forth in the OpenEdge EULA (the "Confidential Information").

21.     Section 10 of the APPA requires that the Confidential Information be used solely for the purpose of performing under the APPA, and that Celayix hold the Confidential Information in strict confidence, not disclose the Confidential Information to any third party without express permission, and take the same precautions to protect the Confidential Information as it takes to safeguard its own confidential information.

22.     Section 10 of the APPA also requires that, upon termination of the APPA, Celayix return the Confidential Information and all copies thereof to PSC or destroy the Confidential Information and all copies thereof and provide a certificate of destruction to PSC.

23.     Section 5 of the OpenEdge EULA separately requires that Celayix limit the use and disclosure of the confidential information to its employees and consultants who are authorized pursuant to the OpenEdge EULA to use the licensed products and who have agreed to be bound by the terms of the OpenEdge EULA.

24.     PSC employs reasonable, appropriate measures to maintain the confidentiality of its software, including by executing confidentiality agreements with its licensees, ensuring that employees and contractor access is appropriately limited, and that any employees or contractors with access are subject to confidentiality agreements, and by maintaining strict permissions to control access to confidential information, with regular and comprehensive reviews of these processes.

25.     In response to the Termination Notice, Celayix assured PSC that it was phasing out the use of PSC software products and migrating its SaaS customers to a different vendor. In fact, Celayix represented that it was accelerating the removal of PSC software.

26.     However, in October 2023, a software development manager at Celayix reached out to PSC with a technical support question about OpenEdge's compatibility with other software, indicating that Celayix was still using PSC software in its applications.

27.     Between October of 2023 and February of 2024, Celayix continued to represent that it was no longer using PSC software in its SaaS, but that it was taking Celayix time to extract PSC source code. As a result, Celayix indicated it was willing to pay a reduced fee for the duration of the period in which it was phasing out PSC software.

28.     On February 20, 2024, PSC had a call with Celayix's Chief Financial Officer, Sarj Dhaliwal ("Dhaliwal"), during which Dhaliwal agreed to provide a list of customers currently using PSC software to enable the parties to relicense the software product group and get Celayix caught up on payments due to PSC and back in compliance.

29.     On March 11, 2024, after missing the deadline set for providing the customer list and after additional follow-up by PSC, Dhaliwal provided a list of Celayix customers using PSC software. The list included over 200 customers and over 3,300 users. Dhaliwal noted that PSC software was embedded in Celayix applications and that Celayix needed to continue the process of removing this PSC software.

30.     On April 9, 2024, PSC's Senior Partner Account Manager, Tad Buck ("Buck") provided Celayix with a proposed term sheet that would enable Celayix to get back into compliance by making back payments and to continue using PSC software for an annual subscription fee through 2027. The proposed term sheet also granted Celayix a license to continue using PSC software in certain of its own products, including Team Xpress, Time Xpress, Voice Xpress, and Schedule Xpress. The proposed term sheet offered a fair value for Celayix's use of PSC software, taking into account the significant increase in Celayix customers using PSC software products.

31.     Dhaliwal responded that Celayix did not agree with the calculation of payments due and demanded a lower payment, again representing that Celayix does not use Progress software, but rather maintains code which Celayix was in the process of removing.

32.     On April 16, 2024, Buck replied to Dhaliwal requesting that Dhaliwal provide an explanation to substantiate Celayix's counter argument so that the parties could move forward to provide Celayix with compliant licensing.

33.     On July 31, 2024, over three months after PSC's request,[2] Dhaliwal responded by claiming that PSC software products made up a small component of Celayix's applications, and that as such Celayix should only have to pay 20% of PSC's estimated fair value, despite the fact that Celayix continued to use PSC software in its applications and had failed to pay for its usage for over a year.

34.     On August 2, 2024, PSC's in-house counsel, Vinit Patel ("Patel"), responded to Dhaliwal outlining Celayix's continued breach and infringement of the APPA and PSC's intellectual property rights. Specifically, Patel noted that Celayix had, since the Termination Notice on April 3, 2023, "willfully and intentionally, through its own admissions, continued to use and distribute Progress software without a license and infringe upon Progress' intellectual property rights." Patel also informed Dhaliwal that PSC had suffered significant damages as a result of its breach and infringement and requested that Dhaliwal put him in touch with Celayix's legal counsel.

35.     On August 5, 2024, Dhaliwal responded to Mr. Patel's email by reaffirming that PSC software products were embedded in Celayix's applications. However, Dhaliwal again refused to agree to pay the fair value for Celayix's use and licensing of PSC software products and instead reiterated its request to pay only 20% of PSC's estimated fair value.

36.     On August 6, 2024, Patel replied to Dhaliwal reiterating that Celayix continued to openly and willfully use and distribute PSC software products without a license to do so. Patel again requested that Dhaliwal connect him with Celayix's legal counsel.

---

[2] Dhaliwal claimed that she had inadvertently sent the email to the wrong person in May of 2024, but did not provide any explanation at the time as to why she failed to realize that she had done so for almost three months.

37.    Later that day, Dhaliwal responded by again reaffirming that Celayix could not remove Progress software products from its applications immediately and that it would require time to do so. Dhaliwal also claimed, however, that Celayix was not using Progress software products and that Celayix was continuing to "deprecate" the old Progress code. Dhaliwal, however, offered to discuss payment of a different fee than the fee structure PSC proposed.

38.    Based on Dhaliwal's repeated statements that Celayix was willing to pay a reasonable license fee, subject to further negotiation and substantiation of a fair fee, PSC continued to engage in such discussions with a view to resolution and agreement on a reasonable fee.

39.    Because Celayix claimed that its inclusion of PSC software in Celayix's applications was limited, the parties' fee negotiations required an understanding of the actual extent of Celayix's use of PSC software. Accordingly, in January of 2025, PSC engaged one of its senior consultants, Dr. Robert Marshall ("Marshall"), to conduct an audit of Celayix's applications to determine the extent to which those applications continued to rely on PSC software products. Celayix is required to provide access to its systems for such audits under the APPA and Service Provider Partner Schedule.

40.    Contrary to Celayix false claims of minimal use, Marshall's audit revealed that Celayix's use of PSC software was substantial and widespread. In his initial audit session, Marshall determined that Celayix used PSC software products for every customer. Marshall also revealed that, without PSC software products in Celayix's applications, the applications would cease to function.

41.    Following subsequent audit sessions, despite Celayix's initial refusal to grant server-level access to its systems, Marshall prepared a review of Celayix's use of PSC software products, dated January 16, 2025 (the "Celayix Review"). In the Celayix Review, Marshall

9

identified six PSC software products in use by Celayix: Kendo UI, OpenEdge ABL, OpenEdge CDC, OpenEdge Classic AppServer, OpenEdge GUI, and OpenEdge RDBMS. Astonishingly, Marshall's audit revealed that Celayix maintains over 6,000 PSC code artifacts in its repository for PSC OpenEdge source code control.

42.     According to the Celayix Review, Celayix intended to upgrade to PSC's newest version of its OpenEdge software, OpenEdge 12. Celayix's application also relied on PSC's software product, OpenEdge AppServer to support all Application Program Interfacing (API) calls for the application.[3]

43.     The Celayix Review made clear that Celayix continues to use PSC software products as a core part of its applications, despite Celayix's repeated representations that it was no longer using PSC software products and that any remaining PSC software products embedded in its applications were old and were being phased out.

44.     Nevertheless, after repeatedly stating it was willing to negotiate a fair value payment to PSC, which extended the parties' negotiations (and thus Celayix's use of PSC software), Celayix refused to pay the fair value license fee PSC established for Celayix's continued use of PSC software.

45.     As detailed above, for two years, Celayix lied about its use of PSC software and falsely assured PSC that Celayix was willing to pay for its continued limited use of PSC software while Celayix was supposedly phasing it out. When it became clear Celayix had no intention of paying PSC for Celayix's continued use, PSC, through counsel, transmitted a letter to Celayix reiterating PSC's demand that Celayix cease and desist from using and/or distributing PSC software, and further demanding that Celayix take certain steps to ensure all PSC source code was

---

[3] These API calls are used for all access to the database from the user interface.

removed from Celayix's applications and source code repositories ("April 2025 Cease-and-Desist Letter"). A true and accurate copy of the April 2025 Cease-and-Desist Letter is attached hereto as Exhibit E.

46.    Celayix has failed to comply with the demands set forth in the April 2025 Cease-and-Desist Letter.

47.    Celayix continues to knowingly and willfully infringe upon PSC's intellectual property rights by continuing its unlicensed use of PSC software products in its applications, which are used by hundreds of its customers. Celayix also remains in breach of the APPA and Service Provider Partner Schedule for failing to cease use of all PSC software products following the April 3, 2023 Termination Notice. Celayix has also made multiple misrepresentations to PSC regarding the extent and importance of PSC software products used in its applications, in an attempt to renegotiate its subscription fees and frustrate PSC's ability to secure and enforce its intellectual property rights.

48.    Celayix owes PSC substantial payment for its prior, unlicensed use of PSC software products, and PSC continues to be harmed by Celayix's ongoing knowing and willful infringement of PSC's intellectual property rights and unlicensed use of PSC software products.

**COUNT I**
**(Copyright Infringement – 17 U.S.C. §§ 501 et seq.)**

49.    PSC repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates them herein by reference.

50.    This Count is an action for copyright infringement against Defendant Celayix.

51.    PSC is the owner of the code underlying the PSC software products currently in use by Celayix, including Kendo UI, OpenEdge ABL, OpenEdge CDC, OpenEdge Classic AppServer, OpenEdge GUI, and OpenEdge RDBMS (the "Infringed Products").

52.     Original aspects of this code are included in the Celayix applications Time Xpress Web App, Time Xpress Mobile App, Schedule Xpress Web App, Schedule Xpress Mobile App, and eTime Desktop Virtualized App (the "Infringing Applications"). However, all of Celayix's user interfaces and partner interfaces go through the Celayix API which is fully developed using OpenEdge ABL and accesses the Progress RDBMS to get and store data.

53.     PSC is the sole proprietor of all of its rights, title, and interest in and to all copyrights in Infringed Products and in the aspects of the Infringed Product code in the Infringing Applications (collectively the "Infringed Code").

54.     The Infringed Code contains original material and code and is copyrightable subject matter under applicable law immediately upon creation.

55.     The Infringed Code is literary work under the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq*.

56.     The Infringed Code is registered with the United States Copyright Office in Washington, D.C, and PSC has a certificate of registration that covers the Infringed Code, as identified and numbered as follows.

| Title of Work | Registration Number | Date |
|---|---|---|
| OpenEdge 4GL Development System v11.7 | TX 9-066-955 | 21-Jan-22 |
| OpenEdge Query/Results v11.7 | TX 9-086-872 | 17-Feb-22 |
| OpenEdge WebSpeed Workshop v11.7 | TX 9-078-979 | 14-Feb-22 |
| OpenEdge Transparent Data Encryption v11.7 | TX 9-081-191 | 17-Feb-22 |
| OpenEdge SNMP Adapter v11.7 | TX 9-080-453 | 17-Feb-22 |
| OpenEdge Management v11.7 | TX 9-080-429 | 17-Feb-22 |
| OpenEdge WSA v11.7 | TX 9-087-034 | 14-Feb-22 |
| OpenEdge Multi-Tenant Tables v11.7 | TX 9-080-583 | 17-Feb-22 |
| OpenEdge Ultra Controls v11.7 | TX 9-086-877 | 14-Feb-22 |
| OpenEdge Business Process Server v11.7 | TX 9-080-374 | 17-Feb-22 |
| OpenEdge Table Partioning v11.7 | TX 9-081-205 | 17-Feb-22 |
| OpenEdge Application Server Enterprise v11.7 | TX 9-066-884 | 21-Jan-22 |

| | | |
|---|---|---|
| OpenEdge Application Server Basic v11.7 | TX 9-080-365 | 17-Feb-22 |
| OpenEdge Name Server Load Balance v11.7 | TX 9-080-579 | 17-Feb-22 |
| OpenEdge Client Networking v11.7 | TX 9-080-569 | 17-Feb-22 |
| OpenEdge Visual Translator v11.7 | TX 9-086-848 | 14-Feb-22 |
| OpenEdge Translation Manager v11.7 | TX 9-078-970 | 14-Feb-22 |
| OpenEdge Replication v11.7 | TX 9-080-533 | 17-Feb-22 |
| OpenEdge Replication Plus v11.7 | TX 9-081-219 | 17-Feb-22 |
| OpenEdge DataServer for Oracle v11.7 | TX 9-080-347 | 17-Feb-22 |
| OpenEdge DataServer MS SQL Server v11.7 | TX 9-080-591 | 17-Feb-22 |
| OpenEdge Development Server v11.7 | TX 9-080-556 | 17-Feb-22 |
| OpenEdge Enterprise RDBMS v11.7 | TX 9-066-868 | 21-Jan-22 |
| OpenEdge Personal RDBMS v11.7 | TX 9-087-015 | 17-Feb-22 |
| OpenEdge Studio v11.7 | TX 9-081-226 | 17-Feb-22 |
| OpenEdge Workgroup RDBMS v11.7 | TX 9-066-716 | 21-Jan-22 |
| OpenEdge Advance Enterprise RDBMS v11.7 | TX 9-087-064 | 17-Feb-22 |
| Progress Development AppServer for OpenEdge v11.7 | TX 9-086-843 | 14-Feb-22 |
| Progress Production AppServer for OpenEdge v11.7 | TX 9-078-968 | 14-Feb-22 |
| Progress Developer Studio for OpenEdge v11.7 | TX 9-067-009 | 21-Jan-22 |
| OpenEdge CDC for Workgroup v11.7 | TX 9-065-679 | 21-Jan-22 |
| OpenEdge CDC for Enterprise v11.7 | TX 9-066-718 | 21-Jan-22 |
| OpenEdge Auth Gateway v11.7 | TX 9-066-717 | 21-Jan-22 |

57.     Celayix was permitted limited rights to use the Infringed Code pursuant to the APPA and Service Provider Partner Schedule, effective as of February 5, 2021.

58.     On April 3, 2023, PSC issued a notice of termination to Celayix due to Celayix's failure to pay its subscription fees thereunder.

59.     The termination, made as a result of Celayix's nonpayment under Section 13.2.1.1 of the APPA and Section 11.2.1 of the Service Provider Partner Schedule, was effective as of April 3, 2023.

60.    Pursuant to Section 13.2.4 of the APPA and 11.2.3(i) of the Service Provider Partner Schedule, the due date of all outstanding invoices to Celayix was accelerated such that any payments due thereunder became due and payable on the effective date of termination.

61.    Additionally, pursuant to Section 11.2.3(ii) of the Service Provider Partner Schedule, upon termination, Celayix was required to destroy and cease use of any software products licensed under the APPA and Service Provider Partner Schedule, and to destroy and documents and materials provided by PSC thereunder.

62.    Celayix's license to the Infringed Code expired on April 3, 2023.

63.    Celayix has continued to knowingly and willfully use the Infringed Code in its applications in a substantial and material way, including to support all Application Program Interfacing (API) calls for the applications for every customer.

64.    Celayix's continued knowing and willful use of the Infringed Code without a license constitutes willful copyright infringement under the U.S. Copyright Act, 17 U.S.C. §§ 501 *et seq*.

65.    The foreseeable and probable result of the aforesaid conduct of Celayix has deprived, and will continue to deprive PSC of business from licensing of the Infringed Code, and of goodwill.

66.    PSC is further informed and believes, and based thereon alleges, that it has lost or will lose license revenue for the Infringed Code and has sustained or will sustain damages as a result of Celayix's aforesaid wrongful conduct and infringement of the Infringed Code.

67.    Celayix has been and continues to be unjustly enriched by its ongoing, unlicensed use, distribution, and implementation of the Infringed Code and any works, products, or applications derived therefrom.

68.     PSC believes that, unless it is enjoined by this Court, Celayix will continue its course of conduct, and to wrongfully use, infringe upon, and/or otherwise profit from the Infringed Code, and works, products, or applications derived therefrom. As a direct and proximate result of the acts of Celayix alleged herein, PSC has already suffered irreparable damages and has sustained lost revenues, profits and/or monies.

69.     PSC has no adequate remedy at law to redress all of the injuries Celayix has caused, and which Celayix continues to cause. PSC will continue to suffer irreparable damages and to sustain lost revenues, profits and/or monies until Celayix's continuing infringement and actions alleged herein are enjoined by this Court. PSC is entitled to an injunction restraining Celayix, and its agents, representatives, and all persons acting in concert with it, from engaging in further acts in violation of copyright law.

70.     PSC is further entitled to recover from Celayix the damages it has sustained and will sustain as a result of Celayix's wrongful acts as herein described and alleged, which damages cannot fully be determined at this time. PSC is further entitled to recover from Celayix the gains, profits and advantages Celayix has obtained as a result of its wrongful acts as alleged herein, as well as any available statutory damages or attorneys' fees provided by the Copyright Act. At present, PSC is unable to ascertain the full extent of the gains, profits and advantages Celayix has obtained by reason of its acts of copyright infringement, herein alleged.

WHEREFORE, Plaintiff PSC demands trial by jury of all issues so triable and judgment against Celayix as follows:

a.   Celayix be held to have infringed PSC's copyrights in the Infringed Code;

b.   That Celayix, its agents, employees, representatives, and all other persons in active concert or privity or in participation with them, be enjoined from directly or indirectly

infringing PSC's copyrights in the Infringed Code, or continuing to use, copy, market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, or manufacture any works derived or copied from PSC or to participate or assist in any such activity;

c.  That Celayix, its agents, employees, representatives, and all other persons in active concert or privity or in participation with them, be enjoined to return to PSC any originals, copies, facsimiles or duplicates of any works shown by the evidence to infringe on any PSC copyright;

d.  That Celayix be enjoined to deliver upon oath, to be impounded during the pendency of this action, and for destruction pursuant to judgment herein, all originals, copies, facsimiles or duplicates of any works shown by the evidence to infringe any PSC copyright;

e.  That Celayix be required to file with the Court and to serve on PSC within thirty (30) days after service of the Court's Order as prayed herein, a report in writing under oath setting forth in detail the manner and form in which Celayix complied with the Court's Order;

f.  That judgment be entered for PSC and against Celayix for PSC's actual damages according to proof, and for any additional profits attributable to infringements of PSC's copyright, in accordance with proof;

g.  That judgment be entered for PSC and against Celayix for statutory damages based upon any and all acts of infringement, as well as increased damages for knowing and willful infringement, as available pursuant to the Copyright Act, 17 U.S.C. § 501, *et seq*;

h.  That Celayix be required to account for all gains, profits and advantages derived from its acts of infringement or for its other violations of law;

i.  That all gains, profits and advantages derived by Celayix from its acts of infringement be deemed to be in constructive trust for the benefit of PSC and awarded to PSC;

j.  That PSC have judgment against Celayix for its costs and attorneys' fees pursuant to 17 U.S.C. § 505; and/or

k.  That the Court grant such other and further relief as the Court deems just and proper under the circumstances.

**COUNT II**
**(Misappropriation of Trade Secrets – 18 U.S.C. §§ 1836 et seq.)**

71.     PSC repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates them herein by reference.

72.     The Defend Trade Secrets Act defines trade secrets as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible…." 18 U.S.C. § 1839(3).

73.     The Infringed Code constitutes and/or consists of trade secrets under the Defend Trade Secrets Act under the above definition, because PSC took reasonable measures to keep this information secret, and because PSC derives independent economic value from the fact that this information is not generally known.

74.     PSC only permits use of its software, including OpenEdge, by authorized licensees who expressly agree to maintain the confidentiality of the software and otherwise refrain from using the software outside the scope of the limited license.

75.     Upon PSC's termination of the Agreement, Celayix was no longer authorized to use or distribute OpenEdge software or any other PSC Products. Furthermore, under the OpenEdge EULA, "[w]ithin ten (10) days of the date of expiration or termination of this Agreement and/or any of the licenses granted hereunder, [Celayix] shall return all copies of the Products, including all Updates, and related Documentation to Progress…." EULA § 8.3. Celayix's retention and unlicensed use of the Products in breach of the Agreement constitutes misappropriation of trade secrets in violation of the Defend Trade Secrets Act.

76.     Consequently, Celayix is liable for misappropriation of trade secrets under federal law. Because of Celayix's willful and malicious misappropriation of PSC's trade secrets following PSC's express termination and instructions to cease use, PSC may recover exemplary, double damages and its attorneys' fees incurred in prosecuting Celayix's misappropriation.

77.     PSC also is entitled to injunctive relief to prevent Celayix's unlawful misappropriation of trade secrets.

WHEREFORE, Plaintiff PSC demands trial by jury of all issues so triable and judgment against Celayix as follows:

a.  Celayix be held to have misappropriated PSC's trade secrets in the Infringed Code;

b.  That Celayix and its agents, employees, representatives, and all other persons in active concert or privity or in participation with it, be enjoined from directly or indirectly taking, receiving, concealing, assigning, transferring, leasing, pledging, copying, or otherwise using or disposing of the Infringed Code;

c.  That Celayix and its agents, employees, representatives, and all other persons in active concert or privity or in participation with it, be enjoined to remove and return to PSC

any originals, copies, facsimiles or duplicates of the Infringed Code in its possession, custody, or control.

d.  That judgment be entered for PSC and against Celayix for PSC's actual damages according to proof, and for any additional profits attributable to misappropriation of PSC's trade secrets, in accordance with proof;

e.  That judgment be entered for PSC and against Celayix for statutory damages based upon any and all acts of misappropriation, including double damages under 18 U.S.C. § 1836(b)(3); and

f.  That the Court grant such other and further relief as the Court deems just and proper under the circumstances.

## COUNT III
### (Violation of Massachusetts General Law, Ch. 93 § 42)

78.  PSC repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates them herein by reference.

79.  The Infringed Code constitutes and/or consists of trade secrets under state law which defines trade secrets as "specified or specifiable information, whether or not fixed in tangible form or embodied in any tangible thing, including but not limited to a formula, pattern, compilation, program, device, method, technique, process, business strategy, customer list, invention, or scientific, technical, financial or customer data" (G.L. c. 93 § 42(4)), because PSC took reasonable measures to keep this information secret, and because PSC derives independent economic value from the fact that this information is not generally known.

80.  PSC only permits use of its software, including OpenEdge, by authorized licensees who expressly agree to maintain the confidentiality of the software and otherwise refrain from using the software outside the scope of the limited license.

81.     Upon PSC's termination of the Agreement, Celayix was no longer authorized to use or distribute OpenEdge software or any other PSC Products. Furthermore, under the OpenEdge EULA, "[w]ithin ten (10) days of the date of expiration or termination of this Agreement and/or any of the licenses granted hereunder, [Celayix] shall return all copies of the Products, including all Updates, and related Documentation to Progress…." EULA § 8.3. Celayix's retention and unlicensed use of the Products in breach of the Agreement constitutes misappropriation of trade secrets in violation of the Defend Trade Secrets Act.

82.     Consequently, Celayix is liable for misappropriation of trade secrets under state law. Because of Celayix's willful and malicious misappropriation of PSC's trade secrets following PSC's express termination and instructions to cease use, PSC may recover exemplary, double damages and its attorneys' fees incurred in prosecuting Celayix's misappropriation.

83.     PSC also is entitled to injunctive relief to prevent Celayix's unlawful misappropriation of trade secrets.

WHEREFORE, Plaintiff PSC demands judgment for all damages available to it, including twice its actual damages caused by Celayix, as well as for an injunction against Celayix as follows:

a.  Celayix be held to have misappropriated PSC's trade secrets in the Infringed Code;

b.  That Celayix and its agents, employees, representatives, and all other persons in active concert or privity or in participation with it, be enjoined from directly or indirectly taking, receiving, concealing, assigning, transferring, leasing, pledging, copying, or otherwise using or disposing of the Infringed Code;

c.  That Celayix and its agents, employees, representatives, and all other persons in active concert or privity or in participation with it, be enjoined to return to PSC any

originals, copies, facsimiles or duplicates of the Infringed Code in its possession, custody, or control.

d.    That judgment be entered for PSC and against Celayix for PSC's actual damages according to proof, and for any additional profits attributable to misappropriation of PSC's trade secrets, in accordance with proof;

e.    That judgment be entered for PSC and against Celayix for statutory damages based upon any and all acts of misappropriation, including double damages under Mass G.L. Ch. 93 § 42B; and

f.    That the Court grant such other and further relief as the Court deems just and proper under the circumstances.

**COUNT IV**
**(Violation of Massachusetts General Law, Ch. 93A)**

84.    PSC repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates them herein by reference.

85.    PSC and Celayix are engaged in trade or commerce within the meaning of Chapter 93A of the Massachusetts General Laws.

86.    The acts or practices of Celayix, as described above, constitute unfair or deceptive acts or practices, including acts or practices deemed unfair and deceptive acts of "stringing along," under the false representations of limited "phasing out" use of PSC software and false promise to pay a reasonable fee for such use, in violation of Chapter 93A of the Massachusetts General Laws. In addition, under Massachusetts law, misappropriation of trade secrets alone can constitute a violation of Chapter 93A.

87.    The above-described acts or practices of Celayix occurred primarily and substantially through emails, letters, and telephone conferences sent to or conducted with persons or entities located within the Commonwealth of Massachusetts.

88.    The above-described acts or practices of Celayix were knowing and willful, and they caused actual damages to PSC. Pursuant to Massachusetts General Law, Chapter 93A, § 11, PSC is entitled to recover up to three times the amount of its actual damages from Celayix, plus interest, costs, and attorneys' fees.

WHEREFORE, Plaintiff, PSC demands judgment for all damages available to it, including three times its actual damages caused by Celayix, plus interest, costs, and attorneys' fees.

## COUNT V
### (Breach of Contract)

89.    PSC repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates them herein by reference.

90.    Celayix and PSC entered into the APPA, Service Provider Partner Schedule, and incorporated OpenEdge EULA, which are legally binding agreements.

91.    Celayix has materially breached the terms of the APPA, Service Provider Partner Schedule, and incorporated OpenEdge EULA as detailed herein.

92.    On April 3, 2023, PSC sent Celayix a notice of termination of the APPA (the "Termination Notice").

93.    The termination, made as a result of Celayix's nonpayment under Section 13.2.1.1 of the APPA and Section 11.2.1 of the Service Provider Partner Schedule, was effective as of April 3, 2023.

94.     Pursuant to Section 13.2.4 of the APPA and 11.2.3(i) of the Service Provider Partner Schedule, the due date of all outstanding invoices to Celayix was accelerated such that any payments due thereunder became due and payable on the effective date of termination.

95.     Additionally, pursuant to Section 11.2.3(ii) of the Service Provider Partner Schedule, upon termination, Celayix was required to destroy and cease use of any software products licensed under the APPA and Service Provider Partner Schedule, and to destroy and documents and materials provided by PSC thereunder.

96.     Celayix is, by its own admission, in breach of the APPA and Service Provider Partner Schedule, as it continues to utilize the Infringed Code.

97.     PSC has suffered damages in excess of $143,000 as a direct and proximate result of Celayix's above-described breach of contract.

## COUNT VI
### (Conversion)

98.     PSC repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint and incorporates them herein by reference.

99.     By virtue of the foregoing, which includes, without limitation, the wrongful exercise of dominion over and use of PSC's confidential and proprietary information, including without limitation, that information contained in the Infringed Code, Celayix has converted PSC's confidential and proprietary information.

100.     As a direct and proximate cause of the foregoing conversion, PSC has suffered damages in an amount to be determined at trial.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff PSC respectfully requests that the Court:

a.   Enter judgment in PSC's favor and against Defendant Celayix;

b.  Grant PSC a preliminary injunction, the application for which is filed herewith, enjoining Celayix, its agents, employees, representatives, and all other persons in active concert or privity or in participation with them, from directly or indirectly infringing PSC's copyrights, or continuing to use, copy, market, offer, sell, dispose of, license, distribute, lease, transfer, display, advertise, reproduce, develop, or manufacture any works derived or copied from PSC or to participate or assist in any such activity;

c.  Grant PSC a preliminary injunction, the application for which is filed herewith, enjoining Celayix, its agents, employees, representatives, and all other persons in active concert or privity or in participation with them, to remove and return to PSC any originals, copies, facsimiles or duplicates of any works shown by the evidence to infringe on any PSC copyright, and to remove and return any originals, copies, facsimiles or duplicates of the PSC software products, marketing materials, technical specifications, instruction manuals, or other materials, and to certify to the Court the destruction of any copies or duplicates thereof;

d.  Grant PSC a preliminary injunction, the application for which is filed herewith, enjoining Celayix to deliver upon oath, to be impounded during the pendency of this action, and for destruction pursuant to judgment herein, all originals, copies, facsimiles or duplicates of any works shown by the evidence to infringe any PSC copyright;

e.  Grant PSC a preliminary injunction, the application for which is filed herewith, requiring Celayix to file with the Court and to serve on PSC within thirty (30) days after service of the Court's Order as prayed herein, a report in writing under oath setting forth in detail the manner and form in which Celayix has complied with the Court's Order;

f.  Enter judgment for PSC and against Celayix for PSC's actual damages according to proof, and for any additional profits attributable to infringements of PSC's copyright, in accordance with proof;

g.  Enter judgment for PSC and against Celayix for statutory damages based upon any and all acts of infringement, as well as increased damages for knowing and willful infringement, as available pursuant to the Copyright Act, 17 U.S.C. § 501, *et seq.*;

h.  Award damages and statutory interest incurred by PSC;

i.  Award treble damages and attorneys' fees under Count IV as a result of Celayix's willful violations of M.G.L. c. 93A;

j.  Award damages and an injunction under Count III as a result of Celayix's willful violations of M.G.L. c. 93, §§ 42-42A;

k.  Award prejudgment interest according to law;

l.  Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

PSC demands a trial by jury on all claims so triable.

Respectfully submitted,

PROGRESS SOFTWARE CORPORATION

By its attorneys,

Dated: July 1, 2025

/s/ Mark Rosen
Mark B. Rosen (BBO No. 669619)
Nicholas Anastasi (BBO No.703171)
PIERCE ATWOOD LLP
100 Summer Street, 22nd Floor
Boston, MA 02110
Tel: (617) 488-8100
Fax: (617) 824-2020
mrosen@pierceatwood.com
nanastasi@pierceatwood.com

## <u>VERIFICATION</u>

I, Maria Trigonis, VP, Strategic Asset Management for Progress Software Corporation, hereby verify that I have read the allegations set forth in the foregoing Verified Complaint and that such allegations are true to the best of my knowledge, information, and belief. I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 1, 2025                    /s/ Maria Trigonis
                                            By: Maria Trigonis
                                            Its: VP, Strategic Asset Management